**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| INTEGRATED SPECIALTY COVERAGES, LLC and SIS SPECIALTY HOLDINGS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ENCORE MANAGING GENERAL AGENCY LLC, DAVID PIKE, PHILLIP SALVAGIO, and CARL SAVOIA,<br><br>Defendants. | PUBLIC REDACTED VERSION - Filed February 27, 2026<br><br>C.A. No. ___<br><br>**JURY TRIAL DEMANDED**<br><br>[redacted] |

**COMPLAINT FOR COPYRIGHT INFRINGEMENT, TRADE SECRET MISAPPROPRIATION, BREACH OF CONTRACT, AND INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

Plaintiffs Integrated Specialty Coverages, LLC ("ISC") and SIS Specialty Holdings, LLC ("SIS Holdings") (collectively, "Plaintiffs"), by and through their counsel, bring this Complaint for copyright infringement, trade secret misappropriation, breach of contract, and intentional interference with prospective economic advantage against Encore Managing General Agency LLC ("Encore"), David Pike, Phillip Salvagio, and Carl Savoia (collectively, "Defendants"), and allege as follows:

## NATURE OF THE ACTION

1. ISC develops and licenses an innovative software platform called "Online MGA" ("OMGA") that connects insurance brokers to insurance carriers. Using the OMGA platform, a broker can obtain quotes from a variety of carriers to fit its client's needs. OMGA allows brokers to easily obtain quotes for a variety of industries, including construction, trucking, and

entertainment. Customers have recognized the OMGA platform as being more intuitive and easy to use as compared to competitors' systems.

2. In July 2019, Plaintiffs purchased Safebuilt Insurance Services, LLC d/b/a SIS Wholesale Insurance Services ("SIS") from Defendants Pike, Salvagio, and Savoia (the "SIS Founders"). Plaintiff SIS Holdings and the SIS Founders memorialized the purchase in a Master Transaction Agreement, which was executed on July 11, 2019. [redacted], which formed the basis for what is now OMGA. Since July 2019, ISC has continued to develop, innovate, and enhance OMGA. Several of the individuals who have worked on OMGA were formerly employed by SIS.

3. [redacted]. On information and belief, the SIS Founders began work on a competing business prior to the expiration of the [redacted], and then launched a new version of their SIS business venture once the [redacted]. They formed Encore, presumably so-named to reference the fact that the business is an "encore" of the SIS business that the SIS Founders sold to ISC. A key part of the Encore business is a software platform (the "Encore System") that performs the same functions as OMGA and has many of the same elements as OMGA.

4. As part of their "Encore" to SIS, Defendants unlawfully copied, misappropriated and used ISC's copyrighted material, trade secrets, and other confidential information to develop and license the Encore System.

5. On information and belief, Defendants retained SIS's confidential information—which was supposed to have been fully transferred to ISC in the 2019 sale of SIS, and thereby became solely ISC's confidential information—in violation of the Master Transaction Agreement.

6. On information and belief, Defendants coordinated with one or more former SIS employees to obtain additional ISC confidential information, such as ISC's source code and internal development plans.

7. On information and belief, the SIS Founders also each own and/or manage one or more entities, including [redacted] (collectively, "Defendants' Affiliates"). Prior to the release of the Encore System, various of the Defendants' Affiliates were customers of ISC who used OMGA. Accordingly, on information and belief, the SIS Founders also had access to the user-facing elements of OMGA through Defendants' Affiliates. Those user-facing elements of OMGA, which are only accessible under license by those with login credentials, are all kept confidential.

8. On information and belief, Defendants unlawfully used and copied ISC's confidential information—including, but not limited to, the information described above—to build, implement, and license the Encore System and to unfairly solicit ISC customers.

9. Accordingly, and as more specifically alleged herein, Plaintiffs bring this suit for copyright infringement, trade secret misappropriation, breach of contract, and intentional interference with prospective economic advantage.

## THE PARTIES

10. ISC is a limited liability company organized and existing under the laws of the State of Delaware, and has its principal place of business at 1811 Aston Ave, Suite 200, Carlsbad, California 92008.

11. SIS Holdings is a limited liability company organized and existing under the laws of the State of Delaware, and has its principal place of business at 1811 Aston Ave, Suite 200, Carlsbad, California 92008.

12. SIS Holdings is an indirect subsidiary of ISC.

13. On information and belief, Encore is a limited liability company organized and existing under the laws of the State of Montana, and has its principal place of business at 710 E 13th Street Suite B, Whitefish, Montana 59937. Encore is registered to do business in the State of Delaware, and has a designated agent in Delaware incident to such registration.

14. On information and belief, David Pike is an individual who resides in or near San Diego, California.

15. On information and belief, Phillip Salvagio is an individual who resides in or near San Diego, California.

16. On information and belief, Carl Savoia is an individual who resides in or near San Diego, California.

17. On information and belief, Defendants Pike, Salvagio, and Savoia own and/or manage Defendant Encore.

## JURISDICTION AND VENUE

18. This action arises in part under the United States Copyright Act (17 U.S.C. § 101 *et seq.*), and the Defend Trade Secrets Act (18 U.S.C. § 1836). This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338.

19. This Court has supplemental jurisdiction over the pendent state law claims for breach of contract and intentional interference with prospective economic advantage under 28 U.S.C. § 1367(a), because those claims are so related to Plaintiffs' claims under federal law that

they form part of the same case or controversy and derive from a common nucleus of operative facts.

20. This Court has personal jurisdiction over Defendants Pike, Salvagio, and Savoia because they consented to the jurisdiction of this Court [redacted]

21. This Court has personal jurisdiction over Defendant Encore because Encore is registered to do business in the State of Delaware, has a designated agent incident to such registration, and has established sufficient minimum contacts within the State of Delaware such that it should reasonably and fairly anticipate being haled into court in the District of Delaware.

22. For example, on information and belief, Encore has entered into contracts with Delaware-based insurance brokers, and has provided those brokers with access to the Encore System that is the subject of this action. In addition, on information and belief, Encore's customers have used the Encore System to generate quotes for insurance policies that would be effective in the State of Delaware. As shown in **Exhibit A**, Encore advertises to customers that its Encore System is available in the State of Delaware.

23. By way of further example, Encore's use of Plaintiffs' confidential information—which Encore knew or should have known was obtained by the SIS Founders in violation of Delaware law—constitutes additional contact with the State of Delaware such that Encore should reasonably and fairly anticipate being haled into court in the District of Delaware.

24. Venue is proper in this District pursuant to 28 U.S.C. § 1391 as to defendants Pike, Salvagio, and Savoia because they expressly consented and waived any objection to venue in the State of Delaware [redacted]:

[redacted]

25. Venue is proper in this District pursuant to 28 U.S.C. § 1391 as to defendant Encore because Encore is subject to this Court's personal jurisdiction.

## FACTUAL BACKGROUND

### A. The OMGA Platform

26. OMGA is a software platform that connects insurance brokers to insurance carriers. Using the OMGA platform, a broker can obtain quotes from a variety of insurance carriers to fit its client's needs. OMGA allows brokers to easily obtain insurance quotes for a variety of industries, including construction, trucking, and entertainment. Customers have recognized OMGA as being more intuitive and easy to use as compared to competitors' systems.

27. ISC keeps all aspects of OMGA, including, but not limited to, the web-based user interface and all of its contents, confidential.

28. In order to access OMGA, an insurance broker must enter into a producer agreement with ISC. Among other restrictions, the producer agreement prohibits the broker from using or disclosing any confidential information belonging to ISC. Upon entering into a producer agreement, the broker is provided with login credentials for OMGA. OMGA is a password-protected system that is only available to those with ISC-issued login credentials.

29. The Terms of Use for the ISC website (attached as **Exhibit B**) provide, in relevant part: "All information that ISC provides to Site users supplying a password is confidential and intended solely for the information of its intended recipient and/or such recipient's financial, legal or tax advisors, provided that such advisors agree not to disclose any information that is confidential." Ex. B § 5.

30. ISC also ensures that any employees or contractors who work on OMGA treat the information contained within the OMGA platform as confidential. Agreements that ISC enters into with its employees and contractors prohibit those employees and contractors from disclosing or using ISC's confidential information for any non-ISC purpose.

31. ISC and its predecessors-in-interest have expended significant creativity, time, and effort in developing OMGA, including, but not limited to, the user interface, options, database structure, source code, and the integration of those items.

32. The OMGA platform is an original work of authorship that is subject to copyright protection.

33. ISC owns all rights to OMGA, which has been registered with the United States Copyright Office as U.S. Registration No. TX 9-568-940. A true and correct copy of the listing for this registration on the Copyright Office website is attached as **Exhibit C**.

**B. Defendants' Business Ventures**

34. In 2005, Defendants Pike, Salvagio, and Savoia founded SIS. Under their ownership, SIS developed a "proprietary rating and on-line policy management system" for insurance brokers to obtain quotes for their clients. Ex. D at 2.

35. SIS employed multiple engineers, including at least Eric Holcomb, Jason Wallace, and Viral Mehta (collectively, the "SIS Engineers"). The SIS Engineers were involved in the development of the proprietary SIS system described above.

36. In 2006, after founding SIS, Defendants Pike, Salvagio, and Savoia founded Preferred Contractors Insurance Company Risk Retention Group, LLC ("PCIC"), an insurance company that specializes in offering insurance policies to homebuilders and other construction contractors.

37. In July 2019, Plaintiffs purchased SIS—[redacted]—from the SIS Founders.

38. In this transaction, Defendants Pike, Salvagio, and Savoia [redacted]. However, also in July 2019, PCIC entered into an agreement with SIS—which at that point had become an ISC subsidiary—[redacted].

39. Among other provisions, this agreement specified that [redacted]. This policy form is unique in the insurance industry, as it contains several provisions and exclusions that are specific to construction applications and correspond to confidential and proprietary ISC business information and practices. ISC and its subsidiaries have used this policy form to generate substantial business in the time since acquiring SIS.

40. The agreement between PCIC and SIS also provided [redacted].

41. Following the July 2019 transaction, the SIS Engineers each signed employment agreements with Ignidus Technology, LLC ("Ignidus"), an ISC subsidiary. Pursuant to these agreements, the SIS Engineers were given access to ISC's confidential information, including the source code and other contents of the [redacted]. The SIS Engineers were prohibited, however, from using or disclosing any of ISC's confidential information outside of ISC.

42. Over the next three and a half years, the SIS Engineers worked to develop OMGA, which is based on the [redacted]. During that time, the SIS Engineers became aware of additional ISC confidential information, such as proposed feature additions and customer identities.

43. In January 2023, the SIS Engineers were each terminated from their employment with Ignidus.

44. Also in January 2023, ISC entered into a consulting agreement with Owlstack LLC, a consulting firm formed by the SIS Engineers. Pursuant to this agreement, the SIS Engineers continued to have access to ISC's confidential information, but were prohibited from using it or disclosing it outside of ISC.

45. The consulting agreement with Owlstack LLC was terminated on August 31, 2023.

46. On information and belief, one or more of the SIS Engineers have remained in contact with the SIS Founders since the 2019 sale of SIS. By way of example only, Eric Holcomb currently serves as the Chief Technology Officer for Frontwave Arena in San Diego, California. Ex. E at 1. And Defendant Salvagio is the president of the ownership group for Frontwave Arena. Ex. F at 1.

47. Following the 2019 sale of SIS, the SIS Founders continued to operate Defendants' Affiliates. Various of these companies were customers of ISC and had access to the ISC System as a result of their contracts with ISC. Through the Defendants' Affiliates, the SIS Founders were able to access and view the user-facing confidential elements of OMGA.

48. The SIS Founders also [redacted] following the 2019 sale of SIS. On information and belief, in the years that followed, the SIS Founders used [redacted] to prepare for the launch of Encore. For example, prior to the expiration of the [redacted]

[redacted], PCIC contacted ISC to ask for information about PCIC's policy form, [redacted]. On information and belief, the SIS Founders used this confidential and proprietary information—[redacted]—to develop Encore's policy form.

49. The Encore policy form is substantially similar to the PCIC policy form. Encore's form contains several exclusions that are similar to the provisions of the PCIC policy form, which reflect ISC's confidential business practices and information.

50. After the SIS Founders' [redacted], the SIS Founders officially formed Encore and Defendants launched the Encore System.

51. The Encore System is substantially similar to and mirrors OMGA in many respects. By way of example only, there is substantial overlap in the layout and structure of the user interface, the text displayed on the forms of the two systems, and the general functionality of the two systems.

52. By way of further example, the Encore System incorporates one or more features that, although not currently implemented in the OMGA platform, were discussed and/or developed in the presence of the SIS Engineers while they were employed by Ignidus and/or consulted through Owlstack.

53. On information and belief, following the release of the Encore System, Defendants caused the Defendants' Affiliates to end their contractual relationships with ISC and enter into contractual relationships with Encore.

54. In addition, Defendants solicited other ISC customers in an attempt to persuade those customers to end their relationships with ISC and begin new relationships with Encore. In the course of these solicitations, Defendants have emphasized the similarities of the Encore System to OMGA.

55. On information and belief, Defendants contacted those customers using information that they improperly obtained from ISC. For example, on January 5, 2026, Encore sent an email to the personal email address of an ISC employee, attempting to solicit business for the Encore System. Ex. G at 1–2. On information and belief, that employee's personal email address was used specifically for testing OMGA; the address would not have been known to Encore unless it was improperly obtained from OMGA while the SIS Founders or the SIS Engineers had access to the confidential information contained in OMGA.

**COUNT I: COPYRIGHT INFRINGEMENT**
**(Against Defendant Encore)**

56. Plaintiffs repeat, reallege, and incorporate by reference paragraphs 1–55 as if fully set forth herein.

57. OMGA is an original work of authorship and constitutes copyrightable subject matter under the copyright laws of the United States, 17 U.S.C. § 101 *et seq.* OMGA has been registered with the United States Copyright Office as U.S. Registration Number TX 9-568-940.

58. ISC is the owner of all right, title, and interest to the copyright registration for OMGA and has complied in all respects with the laws governing copyright. OMGA includes the literal, proprietary source code for the OMGA platform, as well as the non-literal elements reflected in that source code, such as the user interface components, the database schema and structure, the URL routing scheme, and OMGA's screen displays.

59. As owner of OMGA, ISC enjoys the exclusive right to, among other things, reproduce OMGA, prepare derivative works, and distribute copies of OMGA. 17 U.S.C. §§ 101, 106.

60. On information and belief, the SIS Founders retained a copy of the SIS software platform (or a portion thereof) [redacted]. Accordingly, Encore had

access—via its agents, the SIS Founders—to OMGA insofar as it contains elements that were present in the SIS software platform in July 2019.

61. The SIS Engineers had access to OMGA during their employment at Ignidus, and while consulting for ISC while at Owlstack. On information and belief, the SIS Founders have remained in contact with one or more of the SIS Engineers, who have shared information about and copies of OMGA with the SIS Founders. Accordingly, Encore had access—via its agents, the SIS Founders—to OMGA through the SIS Engineers who had access to that system.

62. Various of the Defendants' Affiliates were customers of ISC and had access to OMGA. Through their connections with these firms, the SIS Founders were able to access and view the confidential user-facing elements of OMGA. Accordingly, Encore had further access—via its agents, the SIS Founders—to the user-facing elements of OMGA, including HTML source code for OMGA and the screen displays associated therewith.

63. On information and belief, Encore copied portions of OMGA in the form of at least the OMGA platform's database and user interface elements. By way of example only, on information and belief, Encore copied the list of "class codes" that is maintained in OMGA and presented to users when preparing a quote request. By way of further example, on information and belief, Encore copied the URL routing scheme used in OMGA. In at least these ways, on information and belief, the Encore system is substantially similar to OMGA.

64. On information and belief, Encore without authorization created, reproduced, and distributed derivative works, including the Encore System, based upon OMGA, by copying one or more proprietary elements of OMGA.

65. By its actions alleged above, Encore directly infringed and will continue to infringe, ISC's copyright in OMGA by creating, reproducing, and distributing the Encore System.

66. On information and belief, Encore's infringement was deliberate, willful, and in disregard of ISC's rights, and it was committed for the purpose of commercial gain.

67. The direct infringement of ISC's copyright by Encore harmed and will continue to irreparably harm ISC unless restrained by this Court. ISC's remedy at law is not adequate, by itself, to compensate for the harm inflicted and threatened by Encore. Thus, in addition to all other remedies to which it is entitled, ISC is entitled to injunctive relief restraining Encore, its officers, agents, employees, and all persons acting in concert with it from engaging in further acts of copyright infringement as described herein.

68. As a direct and proximate result of Encore's copyright infringement, ISC has suffered and will continue to suffer monetary loss to its business reputation and goodwill. ISC is also entitled to recover from Encore the damages it has suffered and will continue to suffer as a result of Encore's infringement, in actual amounts to be proven at trial and including, but not limited to, any and all gains, profits, and advantages Encore has obtained as a result of its infringement. In the alternative, ISC is entitled to statutory damages pursuant to 17 U.S.C. § 504(c).

69. ISC is also entitled to recover its attorneys' fees and costs of suit pursuant to 17 U.S.C. § 505.

**COUNT II: MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT**
**(Against All Defendants)**

70. Plaintiffs repeat, reallege, and incorporate by reference paragraphs 1–69 as if fully set forth herein.

71. OMGA, including its source code and non-literal elements, constitutes a trade secret under 18 U.S.C. § 1839(3). ISC's plans for feature additions to the OMGA platform, as well as its customers' identities and contact information, likewise constitute trade secrets under 18

U.S.C. § 1839(3). The nature and amount of ISC's business that is attributable and/or corresponds to the PCIC policy form, and the provisions contained therein, is also a trade secret under 18 U.S.C. § 1839(3). ISC's trade secrets derive independent economic value, actual or potential, from not being generally known or ascertainable through proper means.

72. ISC takes and has taken reasonable steps to keep OMGA and its other confidential information secret by, among other things, requiring its customers, employees, and contractors to treat OMGA as confidential, and by prohibiting disclosure of ISC's proprietary business information.

73. Although the SIS Founders had access to ISC's confidential information through various means—such as through the pre-acquisition development of the SIS software platform, through the access to OMGA granted to the Defendants' Affiliates, and through communication with ISC via PCIC—Defendants knew or should have known that the SIS Founders had a duty to maintain the secrecy of that information. Furthermore, Defendants knew or should have known that the SIS Engineers, the Defendants' Affiliates, and PCIC likewise had a duty to maintain the secrecy of ISC's confidential information.

74. Defendants have engaged in a continuing misappropriation, which constitutes a single claim of misappropriation under the Defend Trade Secrets Act. 18 U.S.C. § 1836(d).

75. Defendant Encore has misappropriated ISC's trade secrets by, among other things, using those trade secrets to develop and sell the Encore System, which competes directly with OMGA.

76. The SIS Founders have misappropriated ISC's trade secrets by, among other things, disclosing ISC's trade secrets to Encore for purposes of developing the Encore System.

77. Defendants used the ISC trade secrets they improperly obtained to leverage the OMGA technology in order to speed development of the Encore System and market that technology to customers who knew and liked OMGA. Defendants' actions unfairly exploit ISC's investment of time, resources, and goodwill. Defendants' misappropriation of ISC's trade secrets allowed them to substantially reduce the time and investment necessary to develop the Encore System, apparently doing so in a matter of months rather than after years of development and investment of substantial engineering costs. Defendants have also used ISC's trade secrets to solicit customers, and have told prospective customers that the Encore System is modeled after OMGA.

78. As a result of Defendants' misappropriation, ISC has suffered irreparable harm in the form of misappropriation of its trade secrets, as well as actual or potential harm to its goodwill and business reputation.

79. ISC has also suffered economic loss, which is unascertainable at this time without discovery, and future economic loss, which is presently incalculable without discovery.

80. Unless enjoined, Defendants will continue to benefit from the misappropriation of ISC's trade secrets, causing even further irreparable injury to ISC for which there is no adequate remedy at law.

81. Pursuant to 18 U.S.C. § 1836(b)(3), ISC is entitled to preliminary and permanent injunctions barring Defendants from further benefitting from the misappropriation of ISC's trade secrets as set forth herein.

82. ISC is entitled to an award of actual damages incurred as a result of Defendants' wrongful acts, as well as an award of damages equal to Defendants' unjust enrichment and/or the imposition of a reasonable royalty as provided by for by 18 U.S.C. § 1836(b)(3)(B).

83. ISC is also entitled to an award of exemplary damages, as well as its reasonable costs and attorneys' fees incurred hereby, pursuant to 18 U.S.C. § 1836(b)(3)(C)–(D).

**COUNT III: BREACH OF CONTRACT**
**(Against Defendants Pike, Salvagio, and Savoia)**

84. Plaintiffs repeat, reallege, and incorporate by reference paragraphs 1–83 as if fully set forth herein.

85. SIS Holdings and the SIS Founders were all parties to the July 2019 Master Transaction Agreement, a valid contract under Delaware law.

86. SIS Holdings performed all conditions, covenants, and promises required on its part to be performed in accordance with the Master Transaction Agreement's terms and conditions, and any and all other conditions precedent to the SIS Founders' performance occurred.

87. On information and belief, the SIS Founders each breached their obligations under the Master Transaction Agreement by at least: [redacted]

88. The term [redacted] as used in the Master Transaction Agreement, [redacted]. The term [redacted] as used in the Master Transaction Agreement, also encompasses [redacted].

89. In addition, the SIS Founders each breached the [redacted] of the Master Transaction Agreement. This provision provides that the SIS Founders

[redacted]

90. As used in the Master Transaction Agreement, the term [redacted] includes [redacted]. On information and belief, the SIS Founders breached the [redacted] of the Master Transaction Agreement, at least by leveraging their [redacted] to prepare for the launch of Encore prior to the expiration [redacted].

91. As a direct and proximate result of Defendants' breaches, Plaintiffs have been damaged in an amount to be proven at trial. Defendants misused Plaintiffs' confidential and proprietary information against ISC—for the benefit of Encore—to compete unfairly in the marketplace. Through the Defendants' breaches, Encore was able to unfairly compete with ISC, even though Defendants did not invest the time, money, and/or other resources that Plaintiffs did to develop such products, services and technology. As a result, Plaintiffs have suffered and will continue to suffer economic injury and monetary loss to their business, including, for example, lost profits and price erosion of ISC's products and services.

## COUNT IV: INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
**(Against All Defendants)**

92. Plaintiffs repeat, reallege, and incorporate by reference paragraphs 1–91 as if fully set forth herein.

93. ISC maintains economic relationships with its customers in the form of producer agreements, which provide for, among other things, the use of OMGA. These relationships afford ISC probable future economic benefit and advantage in the form of future contract renewals and new contracts for additional ISC services.

94. Defendants were aware of the existence of an economic relationship between ISC and its customers, as demonstrated by the fact that various of the Defendants' Affiliates maintained an economic relationship with ISC. Defendants' awareness is further evidenced by their attempts to solicit business from current ISC customers, and highlighting the similarities between OMGA and the Encore System during those solicitations.

95. On information and belief, Defendants used their knowledge of the nature and amount of ISC's business attributable and/or corresponding to the PCIC policy form—an ISC trade secret—to identify which customers to target with those solicitations.

96. Defendants engaged in intentional, unlawful conduct designed to disrupt ISC's economic relationships with its customers. Specifically, Defendants obtained unauthorized access to ISC's confidential information, including OMGA, ISC's proposed feature additions, and ISC's customer identities and contact information. Using this information, Defendants intentionally created the Encore System as a competitive offering to OMGA, and used ISC's customer information to solicit business from customers. These actions were calculated to increase Encore's market share by diverting use of OMGA to Encore.

97. Defendants' unauthorized acquisition and use of ISC's confidential information interfered with ISC's established economic relationships, including by creating a perception that Encore could offer a system with the same functionality as OMGA. Based on this perception, Defendants were able to, among other things, unfairly compete with ISC without investing the time, money, and/or other resources that ISC did to develop OMGA.

98. On information and belief, various of the Defendants' Affiliates declined to renew their contracts with ISC and instead entered into an economic relationship with Encore once the Encore System was available.

99. As a result of Defendants' interference, ISC has suffered economic harm in an amount to be proven at trial.

100. Additionally, ISC is entitled to punitive damages as a result of Defendants' willful and malicious interference with ISC's prospective economic advantage.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request:

a. Judgment be entered that Encore infringed ISC's copyright in OMGA;

b. Judgment be entered that Defendants misappropriated ISC's trade secrets under the Defend Trade Secrets Act;

c. Judgment be entered that Defendants Pike, Salvagio, and Savoia breached the Master Transaction Agreement;

d. Judgment be entered that Defendants intentionally interfered with ISC's prospective economic advantage;

e. An injunction enjoining Defendants and their officers, agents, servants, employees, successors, assigns, and all persons acting in concert with them, from directly or indirectly engaging in acts that infringe ISC's copyright;

f. An injunction enjoining Defendants and their officers, agents, servants, employees, successors, assigns, and all persons acting in concert with them, from using or disclosing any of ISC's trade secrets;

g. An award of actual damages and any additional infringer's profits under 17 U.S.C. § 504 together with pre-judgment and post-judgment interest on the damages awarded; or if elected prior to final judgment, statutory damages pursuant to 17 U.S.C. § 504(c);

h. An award of actual damages as well as an award of damages equal to Defendants' unjust enrichment and/or the imposition of a reasonable royalty under 18 U.S.C. § 1836(b)(3)(B), together with pre-judgment and post-judgment interest on the damages awarded, for Defendants' misappropriation of ISC's trade secrets;

i. An award of exemplary damages, together with pre-judgment and post-judgment interest on the damages awarded, as well as Plaintiffs' reasonable costs and attorneys' fees incurred hereby, under 18 U.S.C. § 1836(b)(3)(C)–(D);

j. An award of actual damages sustained as a result of the breaches of the Master Transaction Agreement by Defendants Pike, Salvagio, and Savoia, together with pre-judgment and post-judgment interest on the damages awarded;

k. An award of damages sufficient to compensate ISC for Defendants' intentional interference with ISC's prospective economic advantage, together with pre-judgment and post-judgment interest on the damages awarded;

l. An award of punitive damages as a result of Defendants' willful and malicious interference with ISC's prospective economic advantage, together with pre-judgment and post-judgment interest on the damages awarded;

m. An award of attorneys' fees pursuant to 17 U.S.C. § 505 and/or 18 U.S.C. § 1836(b)(3)(D) and all other applicable statutes and rules in common law as may apply;

n. Costs and expenses in this action; and

o. Any and all other legal or equitable relief that the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to D. Del. LR 38.1 and Fed. R. Civ. P. 38, Plaintiffs hereby demand a trial by jury on all issues properly triable by jury in this action.

Of Counsel:

WILLKIE FARR & GALLAGHER LLP

Krista S. Schwartz (*pro hac vice* forthcoming)
333 Bush St.
San Francisco, CA 94104
(415) 858-7400
kschwartz@willkie.com

Dane D. Sowers (*pro hac vice* forthcoming)
1875 K Street, N.W.
Washington, DC 20006
(202) 303-1000
dsowers@willkie.com

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

/s/ Anne Shea Gaza

Anne Shea Gaza (No. 4093)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
dmackrides@ycst.com

*Attorneys for Plaintiffs*
*Integrated Specialty Coverages, Inc. and*
*SIS Specialty Holdings, LLC*

Dated: February 27, 2026